UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>　　Plaintiff,<br><br>v.<br><br>VANDERBILT MORTGAGE AND FINANCE, INC.<br><br>　　Defendant. | Case No. |

**COMPLAINT**

The Consumer Financial Protection Bureau ("Bureau" or "Plaintiff") brings this action against Defendant Vanderbilt Mortgage and Finance, Inc. (Vanderbilt) for originating manufactured-home-purchase loans without making a reasonable, good-faith determination that their borrowers would have a reasonable ability to repay those loans.

**INTRODUCTION**

1. Manufactured homes, commonly known as mobile homes, are a vital source of affordable housing for millions of financially vulnerable, low-income Americans, many of whom are located in rural areas of the United States and lack access to affordable site-built homes for themselves and their families.

2. Vanderbilt is a manufactured-home-financing company that purports to provide access to affordable housing for this financially vulnerable population, but

instead, it saddled borrowers in the greatest need with mortgages that they couldn't reasonably afford to repay.

3. Vanderbilt's underwriting process ignored clear and obvious red flags that certain consumers would not be able to repay their loans according to their terms. Vanderbilt used implausible estimates of monthly expenses that meaningfully underestimated what consumers would need, after paying their monthly mortgage payments and other often significant monthly debt obligations, in order to keep food on the table and meet other living expenses.

4. Additionally, for some of these same consumers who lacked sufficient monthly income to cover living expenses, Vanderbilt ignored that these consumers were currently struggling to satisfy their existing debt obligations, as demonstrated by one or more debts in collection on the consumers' credit reports, and that they lacked assets to repay these debts.

5. As a result, Vanderbilt originated loans where the company did not make a reasonable, good faith determination of the consumer's ability to repay the loan, as the law requires. Predictably, many of these consumers experienced late fees and penalties when their loans became delinquent and had their homes repossessed when their delinquent loans went into default.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction because this action is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

7. Venue is proper in this district because the Defendant is located, resides, or does business here. 12 U.S.C. § 5564(f).

**PARTIES**

8. The Bureau is an agency of the United States charged with regulating the offering and provision of consumer financial products and services under "Federal consumer financial laws," 12 U.S.C. § 5491(a), including the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5481 *et seq.* (CFPA); the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA); and TILA's implementing Regulation Z, 12 C.F.R part 1026. *See* 12 U.S.C. § 5481(12), (14). The Bureau has independent litigating authority, including the authority to enforce the Federal consumer financial laws. 12 U.S.C. § 5564(a), (b).

9. Defendant, Vanderbilt, is a Tennessee corporation, with its principal place of business at 500 Alcoa Trail, Maryville, TN 37804. Defendant is a subsidiary of Clayton Homes, Inc., which is, in turn, a subsidiary of Berkshire Hathaway, Inc. Defendant is a "covered person" under the CFPA, 12 U.S.C. § 5481(6)(A), because it engages in offering or providing extensions of credit—specifically, mortgage loans—to consumers for personal, family, or household purposes, 12 U.S.C. § 5481(15)(A)(i).

10. Defendant is also a "creditor" under TILA and Regulation Z, because Defendant regularly extends credit—specifically, mortgage loans—to consumers for personal, family, or household purposes, where the credit is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and where the obligation is initially payable to Defendant. 12 C.F.R. § 1026.2(12), (17), implementing 15 U.S.C. § 1602(g), (i).

## FACTS

11. Vanderbilt originates mortgage loans to consumers to finance the purchase of manufactured homes.

12. Most loans that Vanderbilt finances are for manufactured homes sold and manufactured by affiliated companies that are owned by Vanderbilt's parent, Clayton Homes, Inc.

13. Before originating a mortgage loan, Vanderbilt purports to make a reasonable and good faith determination at or before consummation that the consumer has the ability to repay the loan according to its terms.

14. In 2014, Vanderbilt developed a residual income model as part of its internal underwriting process. The model subtracts food, healthcare, gasoline, and utility expenses; monthly recurring debt obligations; and the mortgage payment from the applicant's monthly income. Any positive amount left over after this calculation is considered the applicant's net residual income and Vanderbilt evaluates it along with the applicant's assets, debts, and credit profile to determine the consumer's ability to repay the loan.

15. The living expenses Vanderbilt uses in its residual income model are based on either the borrower's self-reported numbers or, where the borrower self-reports $0 in living expenses or other nominal amounts below Vanderbilt's estimate, Vanderbilt substitutes its own, proprietary living-expense estimate (Vanderbilt's Living-Expense Estimate).

16. Vanderbilt's Living-Expense Estimate relies on living-expense figures based on family size that are unreasonable for a single borrower and increasingly unreasonable as borrower's family size grows. When estimating an applicant's living

4

expense, Vanderbilt does not consider other borrower characteristics or geographical variations in living expenses.

17. For example, Vanderbilt's Living-Expense Estimate projects that a single parent with four dependents would incur monthly living expenses well below a reasonable estimate for a single parent's costs to clothe, feed, transport, and care for themselves and four children every month no matter where they live in the United States.

18. Vanderbilt's Living-Expense Estimate is about half the average self-reported living expenses of Vanderbilt's own similarly situated loan applicants.

19. Vanderbilt's loan-underwriting policy permitted the company to rely on its implausible Living-Expense Estimates to approve loans to borrowers who did not have enough income to cover their families' likely living expenses after paying their often significant debt obligations each month.

20. In addition to relying on unrealistic Living-Expense Estimates for many of its borrowers, Vanderbilt ignored the fact that many of these same borrowers had factors that indicated they lacked an ability to repay their loans.

21. Vanderbilt originated loans even where borrowers lacked assets (other than the value of the property securing the loan) that could be relied upon for repayment, given their lack of sufficient residual income. And Vanderbilt also disregarded evidence that borrowers had multiple debts in collection.

22. For example, Vanderbilt approved a loan to co-applicants with 33 debts in collection, insufficient assets to pay those debts, and two young children. Vanderbilt assumed unreasonably low monthly living expenses for this family of four, which would have left them with a net residual income of $65.67 after paying their significant

5

monthly debt obligations, including the Vanderbilt mortgage. The borrowers fell behind on their payment eight months after getting the mortgage.

23. As another example, Vanderbilt approved a loan for a couple to purchase a home. The co-applicants had three dependent children and seven debts in collection. Vanderbilt assumed unreasonably low monthly living expenses for this family of five, which would have left them with $57.78 in net residual income. A year after the mortgage was issued, the borrowers missed a payment and eventually went into default.

24. In some cases, Vanderbilt violated its own loan-underwriting policy and made loans to borrowers who had negative net residual income even under its own implausible Living-Expense Estimates.

25. For example, Vanderbilt approved a mortgage for a single mother with two dependents and a residual income of -$0.50 based on Vanderbilt's unreasonably low monthly living expense estimate for that family. The borrower had nine debts in collection and no additional assets. This borrower failed to make her mortgage payment four months after the mortgage was originated and eventually Vanderbilt sent the loan to collections.

26. For these reasons, borrowers were put into loans where Vanderbilt failed to make a reasonable, good faith assessment at or before the time the loan was made that they could reasonably repay those loans according to their terms. Vanderbilt could not reasonably conclude that a consumer has a reasonable ability to repay their loan according to its terms where the borrower's income and assets (other than the value of the property securing the loan) would be insufficient to make their mortgage payment, other recurring debt obligations, and necessary living expenses.

27. Because of this, many of these borrowers became delinquent on their loans within a few years of consummation and incurred late fees and penalties. Many other borrowers filed for bankruptcy or eventually defaulted on their loans and lost their homes.

## VIOLATIONS OF LAW

### COUNT I: VIOLATION OF TILA AND REGULATION Z's MINIMUM UNDERWRITING STANDARDS

28. TILA and its implementing regulation, Regulation Z, set forth minimum underwriting standards for consumer-credit transactions secured by a dwelling. 15 U.S.C. § 1639c, 12 C.F.R. § 1026.43. Vanderbilt's dwelling-secured mortgage loans must meet Regulation Z's minimum underwriting standards.

29. TILA provides that "In accordance with regulations prescribed by the Bureau, no creditor may make a residential mortgage loan unless the creditor makes a reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan, according to its terms, and all applicable taxes, insurance (including mortgage guarantee insurance), and assessments." 15 U.S.C. § 1639c(a)(1). In turn, the Bureau's Regulation Z provides that a creditor, such as Vanderbilt, "shall not make a loan that is a covered transaction unless the creditor makes a reasonable and good faith determination at or before consummation that the consumer will have a reasonable ability to repay the loan according to its terms." 12 C.F.R. § 1026.43(c)(1).

30. The commentary to Regulation Z also explains that "whether a particular ability-to-repay determination is reasonable and in good faith will depend not only on the underwriting standards adopted by the creditor, but on the facts and circumstances

7

of an individual extension of credit and how a creditor's underwriting standards were applied to those facts and circumstances." 12 C.F.R. pt. 1026 supp. I, cmt. 43(c)(1)-1.i. Additionally, the fact that the "creditor disregarded evidence that the consumer may have insufficient residual income to cover other recurring obligations and expenses, taking into account the consumer's assets other than the property securing the loan, after paying his or her monthly payments for the covered transaction, any simultaneous loans, mortgage-related obligations, and any current debt obligations" is "evidence that a creditor's ability-to-repay determination was not reasonable or in good faith." 12 C.F.R. pt. 1026 supp. I, cmt. 43(c)(1)-1.ii.B.5.

31. As discussed in paragraphs 11 to 27 above, Vanderbilt made mortgage loans to borrowers without making a reasonable and good-faith determination that the borrowers could repay them according to their terms, in violation of TILA, 15 U.S.C. § 1639c(a)(1), and Regulation Z, 12 C.F.R. § 1026.43(c).

### COUNT II: VIOLATION OF CFPA'S PROHIBITION AGAINST PROVIDING A FINANCIAL PRODUCT NOT IN CONFORMITY WITH FEDERAL LAW

32. Section 1036(a)(1)(A) of the CFPA prohibits covered persons from offering or providing to a consumer "any financial product or service not in conformity with Federal consumer financial law," or from committing "any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

33. The CFPA defines "Federal consumer financial law" to include TILA and its implementing Regulation Z. 12 U.S.C. § 5481(14).

As a result, Vanderbilt's violations of TILA and Regulation Z, as described in Count I, constitute violations of Section 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## DEMAND FOR RELIEF

Plaintiff request that this Court:

1. Permanently enjoin the Defendant from committing future violations of 15 U.S.C. § 1639c, 12 C.F.R. § 1026.43, or 12 U.S.C. § 5536(a)(1)(A);

2. Grant additional injunctive relief as the Court may deem to be just and proper;

3. Award damages and other monetary relief against the Defendant;

4. Award restitution or disgorgement against the Defendant;

5. Award civil money penalties against Defendant;

6. Award costs against the Defendant; and

7. Award additional relief as the Court may determine to be just and proper.

Respectfully submitted,

Eric Halperin
*Enforcement Director*
Alusheyi Wheeler
*Litigation Deputy*
Owen Martikan
*Assistant Litigation Deputy*


s/ Meghan Sherman Cater
Meghan Sherman Cater
(NY Bar No. 4473120)
Telephone: 202-435-9165
Email: meghan.cater@cfpb.gov
John Thompson
(NM Bar No. 139788)
Telephone: 202-435-7270

email: john.thompson@cfpb.gov
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552